We're ready to call our first case this morning, United States v. Jordan. Counsel for the appellant, please. Good morning, Your Honors. May it please the Court. Stacey Fossil on behalf of Appellant Mark Jordan. I would like to reserve three minutes of time for rebuttal. Okay, that's done. Thanks. Thank you, Your Honor. Proceed. The plain text of Section 2113D, as well as a proper application of the Supreme Court's decision in Borden v. United States, resolves the question in this case. For two principal reasons, Section 2113D does not qualify as a crime of violence under 924C. Okay, we got your brief, and I know what your two reasons are. We got a lot of questions, so we're just going to dive right in on this already. Great, Your Honor. The first question I got for you is, do we need to reach the question of divisibility if we've already held in Johnson that 2113D is categorically a crime of violence? Your Honor, I think you need to start with Section 2113D, which is the predicate offensive issue here. Why don't we start with what our binding precedent tells us about 2113D? Yep. Doesn't Johnson say 2113D, categorically a crime of violence? Johnson did not resolve the question presented here, which is the particular argument that it is not a crime of violence because it does not have the mens rea required by Borden. Does that matter? Does it matter that somebody didn't make the argument you made if the holding of the case is it's categorically a crime of violence? I mean, does everybody's new argument open up precedent and we say, well, it's not really precedent anymore because they didn't ask that question before? Or do we say, well, that's a good question, but you know what? We got binding precedent. How does that work? This court does not consider precedent binding if the question was not actually litigated and decided and it was not in Johnson. What authority do you have for the idea that a new question that could have been asked but wasn't renders precedent non-precedential? For example, Your Honor, when this court considered, and I believe that Abbott and Daniel's decisions, Pennsylvania possession with intent to distribute and whether that was a serious drug offense under the Armed Career Criminal Act, it considered two separate overbreath arguments. And it didn't in the subsequent case say, this has already been resolved. We can't consider this argument. It said insofar. The way that this court would look at Johnson is to say Johnson held that this was 2113D was a crime of violence insofar as it required physical force, but not insofar as it did not require the mens rea subsequently required by Borden. Okay. So is the analysis different? Because Johnson's holding was under 924C. So does that matter that it's a different crime of violence? Or should our analysis be identical on the two? My analysis would be identical as between 924C and the force clause in the Armed Career Criminal Act. And that is consistent with the way that this court has applied the Supreme Court's decisions interpreting the force clause in cases involving the force clause of 924C. And I would submit, Your Honor, that if the court is focusing on 2113D as we submit that it must, the next question is, is that statute divisible as between underlying crimes in subsection A and B? And we submit that under this Court's decision in Hillox and the Supreme Court's decision in Mathis, there's simply no alternatively phrased language there. And so the only relevant ---- Let's get into it. First, you brought Hillox to our attention last night or this morning. Last week, Your Honor, yes. Yeah. So we, I'll just put it this way. I woke up to it. I don't know what time you submitted it last night. But in Hillox, the question was whether, and you point in your 28J letter to our citation to Brown and things like that, where the framing of the issue is a statute making it a felony to communicate a threat to commit any crime of violence with intent to terrorize was indivisible. That's your quotation of Hillox quoting Brown. But here we have, this isn't any crime of violence. This is a statute in which in the very statute you're pointing to, it says here are two ways that you can rob a bank. You can rob a bank in the A way. You can rob a bank in the B way. And then in D it says if you rob a bank in the A way or the B way and you've got a dangerous weapon, I'm paraphrasing here, then that's another crime. Now, isn't that materially different than some generalized statement about if you commit any crime of violence? It appears to be saying you've got two things you could do. And if you do one of those two things and you've got a weapon, we're going to hit you for an extra, that's an extra criminal offense. I would point this Court to a couple of things. One, that the language of the statute here is any offense in subsections A and B. And we do think that's very unique language that is important. There is no disjunctive or. And Hillock says that alternative phrasing is sort of a requirement to even get into the divisibility analysis. We don't read elements into the statute that don't exist. And here the and is critical. We also – Here's the way this has got to work for it to work right. If one of us is trying to break in, you've got to stop. Go ahead. All right. You brought Hillock's to our attention. It's a 2019 case. I was on the panel. But I've found a 2018 case, Williams, that says RICO is divisible. Williams was never cited to the panel in RICO. Sorry, in Hillock's. Our president says if we've got two ships passing in the night, first one controls here. RICO doesn't list each individual predicate crime with a bunch of ors. It's just, you know, racketeering activity. So why shouldn't Williams control, and we treat this like RICO, and say whenever it's a predicate crime, you've got to prove the elements beyond a reasonable doubt. The test for the categorical approach is about elements. Therefore, we apply the modified categorical approach. I think, Your Honor, I would like to take a close look at that case and the arguments that were made there and be happy to submit supplemental briefing. Perfect. 898F323 at 333 to 334. But I would say, Your Honor, that where neither of those cases obviously directly resolves this particular question, I think the reasoning of Hillock's is persuasive in that it has a statute that involves an offense that can be committed based on two underlying crimes, either the criminal code, the Pennsylvania criminal code, or an offense under the Drug Act. And the Court says that it's not divisible as between those underlying crimes within each of those. And there, it was even a stronger argument for divisibility because there was an or. Here, we would submit the Court would not only have to find that there's a divisibility between A and B, but further divisibility in between the underlying offenses. Let's talk about logic. And I'm skeptical of the idea that the word or is probative, but it seems like the substance rather than the semantics dictate this. If you were defending this client at the underlying trial, you would argue that the government has gone and alleged the first paragraph of 2113A, even though they didn't use the 2113A citation, it's alleged that, you would hold them to having to prove each of the things in that first paragraph of A beyond a reasonable doubt. Correct? And that's what the jury instructions say. I don't think so, Your Honor. I think our submission is that the prosecution could say that there was an underlying felony committed in B or in A. There's a variance. You'd say there was a variance at that point. There's no way. There's no defender on the planet, I submit to you, who would allow the government to convict somebody under B when what they had charged them with was A. You would absolutely make a variance argument. And there may be that argument because of notice reasons, and that is why often the charges— Well, not just notice reasons. It's a different crime. It's not the same crime. The grand jury did not charge it. We submit, Your Honor, that when a defendant pleads guilty, he's only pleading guilty to the elements of that crime. And so here, the first question has to be, is there an element that requires an underlying crime of A or B? And here, there is not. There can be any crime in A or B. But I would also like to submit that even if this Court thinks that the statute— Just stop for a minute because I want to press you on this point that Judge Bibas is asking about. What you're actually arguing is you think it would be lawful for the United States government to charge somebody with violating A and also charge them with violating D, or just take the A out. To charge them with violating D in exactly the way they've done here and that it wouldn't matter if the jury came back and you found out that some of them had thought, well, he didn't really have a gun. Some of them thought it was larceny. It was a B offense, not an A offense, and that that jury verdict would stand. Under your view of the law, that's what D allows. D allows that. Yes, Your Honor. I think the government would argue that— I'm not asking what the government would say. I'm asking whether the position you've got for your client here is that that's what the law permits. Yes, Your Honor, insofar as that is an element of the crime. There may be other notice arguments that could be raised, but yes, there could be a conviction under D where the jury is not unanimous as to which of the underlying offenses in A or B are satisfied. Gotcha, gotcha. And to turn, Your Honor, to our argument that first, jeopardizing is very broad language. It suggests a mere exposure to risk, which suggests recklessness. But even if this Court finds the statute is divisible and that the modified categorical approach applies, robbery by intimidation also is not a crime of violence after the Supreme Court's decision in Borden. Yeah. What in Borden overturned Wilson? What is it that you think—you should point us to the language. Where is it in Borden you think that the Supreme Court said something that makes Wilson bad law? I would point this Court to Borden's definition of purpose and knowledge on pages 1823 through 1824 of— I've got it in front of me. Go ahead. What's the language? The language is that purpose requires a knowing—I'm sorry. Purpose requires a conscious desire to cause a particular result, and knowledge requires knowledge to a practical certainty that a result would follow. And we submit that— Isn't it, in fact, the case that the Court said the line between purpose and knowledge is virtually indistinguishable, and we don't ever worry about it? Yes, Your Honor. We don't care about it. Yes, Your Honor. And the only reason we're talking about knowledge here is because that is what this Court in Wilson correctly interpreted Carter to require only knowing conduct as to the actus reus, so a knowing act that would cause an ordinary bank teller to be intimidated. So you think it's possible for somebody to knowingly come in with a gun or another weapon and ask for money but not know that what they were doing was a violation of law, it was just reckless? Yes. Yes, Your Honor. And we submit that the counterman helps to see how this plays out, because the Supreme Court's recent decision in counterman tells us what a reckless threat looks like versus a knowing threat, and a— So explain this language from Johnson to us, okay? We said one cannot assault a person or jeopardize his life with a dangerous weapon unless one uses, attempts, or uses or threatens physical force. In other words, isn't that saying there's necessarily force and it's not accidental? You're doing it, it is indeed purposeful, it's knowing. You know what you're doing and you know the purpose of it. I mean, isn't that implicit in what we said in Johnson as well as what we said in Wilson? I don't think so, Your Honor. I think Johnson was focused on whether there was physical force and whether it was indirect versus direct. And Wilson properly interpreted Carter to say that the requirement of general intent is simply intent to do an act, an act that would cause an ordinary bank teller to feel intimidated. And we now know from Borden that that's not the type of intent or purpose as to the result that is required. And I think— Help me with this. You spent a lot of time in your briefing trying to avoid 2113A and say, oh, it's got nothing to do with it, it's got nothing to do with it. But isn't it the case that usually when there's knowledge, it carries through, there's a through line through the crime? So if the underlying crime is 2113A, and that's inescapable here, right? Based on the charge and based on what the jury did, we know that that's what he was charged with, was that underlying 2113A. If you have to have knowledge to commit 2113A, and that's the predicate for the 2113D, on what logical basis would you say, well, that knowledge stops because now we're talking about your weapon. Yay. Everything you did up to there, you had to do knowingly. But now knowledge stops because we're not talking just about 2113A. Now we're talking about 2113D. Help me through that. And I'm operating on the assumption that if this court finds it divisible and applies the modified categorical— Go back to the visibility for a second. What subsection D says is whoever in committing or attempting to commit any offense defined in subsections A and B of this section. So I don't see that the or or the and matters because of that word any. It doesn't say whoever commits the offenses defined in subsections A and B. It says any of the offenses. That to me suggests disjunctive. I believe, Your Honor, any offense. I believe similar language was in Hillock's and in Brown. But I would submit that that expansive word, when read together with and, means that it can be any of the offenses there. I don't think that that's significant. Right. A would qualify. B would qualify. Because either one is any of the offenses described in subsections A and B. Yes. And so together that would form the element of the crime, but not split into separate alternative—the Supreme Court used the phrase alternatively phrased. And there's no alternative phrasing here. And I don't think the word any turns it into some sort of alternative phrasing as between different underlying offenses. To return, Mr. Jordan, Judge Jordan. Mr. Jordan's submission is that if 2113A requires, as this Court in Wilson properly interpreted to require, only a knowing act that happens to—that causes a reasonable, ordinary person to become intimidated, then that act is not required to—as part of 2113D. Yeah, that's what I'm trying to get you to help me with. I don't need you to reassert your position. I need you to help me understand the logic of it. Because we've said that mens rea requirements generally extend to each element of a criminal statute. So if that's true, and the mens rea that you have to have to establish the 2113A, or theoretically to establish the 2113B, it's got to be knowing. Wilson's telling us that at least as to A. If we generally presume that that mens rea moves through each element of the crime, so you've got it—you've established the mens rea for that first step, why doesn't it carry through to the rest of the crime as per our usual presumption? I think, Your Honor, I haven't seen that presumption applied where there's two separate provisions like this. But let's—if that presumption does apply, I think you still have then a knowing use of a firearm that recklessly jeopardizes the lives of others or exposes others to risk. And I think that that's the only sort of way to—I think on the government's reading of Borden, there would be reckless crimes swept in because the government would say, all you need is an intent to do the act. So, for example, an intent to do the wrongful act, an intent to speed, an intent to plow your car through a crowded area. Thank you. Let's track that for a minute. We'll take Justice Kagan's example, the vehicular assault example she was giving. Map that onto this because you can see she's an extraordinarily skillful writer and she's found a good example to use where you could see progression down. Take us the progression down in this context of bank robbery where you could get to a point, you could get to a point, a sensible point, where you could say, yeah, that could happen. A person could go into a bank and yell, give me all your money, and that could just be reckless. Like, he didn't know what—he didn't—the actus reus, yeah, he did it. He walked in there and did it. But that yelling it and then the fact that he had a gun or a knife or something, that having the gun or knife part, that was just reckless. He didn't really know what he was doing. He just happened to be in the bank yelling, give me your money, while he happened to have a knife. Give me an example how that would work. So, for example, Your Honor, if someone went into a bank with a gun but a gun concealed, this could satisfy 2113A if the person simply went in and took money that happened to be about to change hands out on the counter or other property that was out and said, back off. Why can't we apply the realistic probability test to say, look, we're driving. We all know how you can get to be a little bit of a lead foot. With bank robbery, you have to be a law professor to think that that could possibly happen. Your Honor, in the Supreme Court's decision in Taylor, the court made clear that the realistic probability test does not apply to a federal statute. It's based on state deference, but for a federal statute, we just look at do the elements require this, and we can use hypotheticals, as the court did in Taylor, to show. We can spin that hypothetical out no matter how bizarre they get, and the law tells you, no, you could get to the edge of the cosmos of weirdness, but if you could hypothesize it, and therefore, because you could hypothesize that recklessness, it's not a categorical match. And bank robbery, armed bank robbery, ceases to be a crime of violence. That's where we get, right? That's the logic of the defender's position. I think you don't need to go to the end of the cosmos. But that's what you're telling us, right? I think courts have said that the hypothetical cannot be overly fanciful, but in a case where— It was a federal statute, right? In a case—I'm not—I would— So in a federal statute, you can get as fanciful as you want. I think, Your Honor, if the hypothetical illustrates that the elements do not match, then it is a hypothetical that this court can consider. And I would submit that these hypotheticals are not that far removed. There are instances where individuals come in with a schematic or intimidating look, but the goal is to get the money, and although they don't have the knowledge or practical certainty that they will be threatening force, that that is the result, and that is a recklessness. And I would also mention that the broad wording of the statute and the way it's been interpreted to even include jeopardizing the life of individuals during escape. So that is where, then, the firearm could come in, and maybe the person pulls it out as they're getting ready to escape. No. Read it. Read it in your brief. Okay. Hold on just a moment. Okay. We'll have you back on rebuttal, Mr. Gisell. Thank you very much. Thank you. Mr. Zosmar. Good morning, Your Honor. Your Honor, may it please the Court, Robert Zosmar on behalf of the government. As always when we deal with the categorical approach, we have a lot of moving parts here, but I think the main proposition that I rest on is that this case is based on and ruled by a governing precedent. Yeah. So go there. Does Johnson control or not? Johnson controls, and Johnson relying on Your Honor's opinion, and Wilson certainly controls. There is nothing in any subsequent decision of the Supreme Court, including Borden, that undermines those rulings, and therefore Does that mean we don't even go to divisibility because it's over? It's over. This Court has ruled, by the way, unanimously with every other appellate court, that both 2113A and D are crimes of violence under any of these various elements clauses. And that is, as Judge Barry used to say, game, set, and match in this matter. I'm happy to discuss, of course, the pieces here. We'll want to talk about that, but I just want to make sure that we've got this as a top line. Now, in fact, the other side has implied in their briefing that you didn't make this divisibility argument below, so have you waived it? I saw they said in their opening brief that this was not an argument made below, that you never pitched the divisibility thing. I guess I can look for it. Is that accurate? I'm not sure. I mean, the main focus in the district court here was on the Borden question of does this crime rest on recklessness. That's what almost all of the briefing was about. I don't recall specifically if divisibility was mentioned, but certainly this Court can affirm on any basis raised by the record, and here clearly we're dealing with a divisible statute, as I'm happy to address. But, again, the decision has been made. Borden says that a crime that rests on recklessness cannot be a crime of violence, but it does not tell us anything about how to interpret the mens rea in particular statutes, such as the bank robbery statute. Why does Wilson end this if Wilson was the decision as to 2113A, right? If their argument is that D introduces some portions that are reckless that we still need to consider, you know, the crime charged here is D, not A. So do we get to look at the underlying crimes? Don't we have to do a divisibility analysis? So I have several answers to that, Your Honor, and I'll try to keep track of them. Okay. It is a divisible statute. The crime here does rest on 2113A, and that's why Wilson is also controlling. This Court essentially said that in Johnson.  went on to say we can reach this result just based on Wilson because the 2113D chart here rests on 2113A. The Court implicitly was recognizing A and B as divisible. But it didn't say that. It didn't say that. And it predates Borden. It doesn't decide the level of mens rea that's required post-Borden. Well, the next of my many points, Your Honor, and I do want to talk about divisibility, but the next of my several points is that even if A and B are not divisible in the context of D, both of them require sufficient mens rea. We're only dealing with A or B. This is not HILICS where, you know, you've got a state statute that says, use a communication facility for any felony in the world. Let's focus some more on divisibility for a bit. Why is it that, you know, does Johnson, you know, does Johnson in the 924C context, does that automatically get carried over to 2113? Does it completely survive Borden? It survives Borden. It, again, directly addresses the question before this Court. Johnson was a 924C case just like this one. You know, it's the exact same issue. In terms of divisibility, Your Honor, I know you want me to get to that. A and B, if that were relevant, which I don't think it is, but A and B are the paradigmatic divisible subsections. They have different penalties, which by itself ends the inquiry. The Supreme Court in Carter in the 2000 decision in Carter held that B is not a lesser included offense of A. Has the government ever taken the position that the jury can be non-unanimous in a 2113B case as between A and B as the underlying predicate? Never. And not just that, but, you know, I've been around a while. I've seen hundreds of bank robbery indictments and bank robbery records. Every case is charged like this. Every case recognizes that A is a divisible subsection. And, in fact, I've never seen an armed bank robbery D prosecution based on subsection B. It's hard to even consider a situation. You know, B is larceny. It's walking in the bank and taking out the money. I think your friends on the other side would say, look, the penalty for a substantive A violation is different from the penalty of a substantive B violation. But the penalty for a D violation doesn't vary depending on whether it's predicated on a violation of first paragraph of A, second paragraph of A, first paragraph of B, second paragraph of B. It's 25 years no matter what. Sure. But, again, because A and B are such clearly distinct crimes, as Justice Thomas spent 20 pages explaining in Carter, the government has never charged and will never charge that it could have been either. And we'll say to a jury, as state juries apparently are told in Hillux, do whatever you want. You don't have to be unanimous as to whether it's A or B. There's never been a prosecution like that, and I wouldn't defend a prosecution like that. Well, there are pains in their briefing and here at the podium again today to say all Carter does is speak to the actus reus, and that's all Wilson does. Wilson looks to that and pulls it in. It's not talking about the ultimate question we've got here. What's your response to that? Well, there really is no relevant distinction, and that's the holding of Wilson. What Carter says, you have to be knowing as to the actus reus, and the actus reus is a taking by force or violence or intimidation, that you don't have to intend that the person actually be intimidated, but the person has to know that you are doing something that will intimidate that person. You have to be knowing. That's sufficient. It's sufficient under Borden for A, for D. It can't be that D requires some completely different intent than the A predicate or the B predicate. Why can't it? I want you to meet head-on the argument that you could have circumstances, and they give three examples in their brief. We heard a repetition of them here today. You know, the person's walking into the bank, but they're not in the bank, and they've threatened people on the street feel threatened. It's reckless in that regard. Or they pull it out of their pocket because they're running out of the bank by accident. Address those. I have not heard an example that would satisfy the statute as defined by Carter and Wilson that would involve only recklessness. Accidentally pulling a gun out that you happen to have in your pocket, well, that's not even knowing. So that wouldn't be sufficient. The guy, Ms. Fossil, this morning talked about the guy walking into a bank with a ski mask on. That sounds like forced violence or intimidation to me, and it sounds like knowing conduct. Maybe not during COVID. Perhaps not. Okay. Ms. Fossil says that realistic probability has no role here because it's a federal statute. Does the government agree? Yes, we do agree with that. Taylor does say, however, that you still have the absurdity canon. You still cannot interpret a statute in a way that renders it absurd. And as we've explained in our brief, that's what would happen here. By the way, if there's a different mens rea for 2113A and D, then we have yet another amazing suggestion based on the categorical approach that bank robbery is a crime of violence, but armed bank robbery is not. And that just can't be. That's simply absurd. Oh, well, we are in the realm of the categorical approach. We are. All things are possible. And you've heard me speak on that many times. I'm not going to belabor the court with that rant. Mr. Salzman, can you speak a little bit to the government's charging practices and instructional practices in crimes like RICO or continuing criminal enterprise? Is it standard practice to instruct the jury on the particular predicates charged? Is the jury required to be unanimous on the predicates charged to find each element of each one beyond a reasonable doubt? Yes. The jury is always – and that's more broadly true for conspiracy as well. If the government only charges conspiracy, it has to – the jury has to be instructed on the elements of the offense that was the object of the conspiracy. And they have to reach a unanimous verdict. The particular one, not just any offense entirely. Exactly. You can't have a conspiracy that just violates federal law. This court has held that there has to be an instruction regarding the elements of defense. And I recall conceding convictions where that didn't happen, where there wasn't proper instruction. And if the government had charged predicate crime A and proved B, there would be a variance problem? Absolutely. Okay. Absolutely. Why not charge A and D? Wouldn't that make this a lot easier? Well, because we certainly could, but it would complicate the case and it's not an accurate statement of what happened. Maybe we could. Maybe I'll take that back with me to talk about. But bank robberies are bank robberies. They're robberies by forced violence or intimidation. We've always charged it that way. And, again, I can't even think of a bank larceny that was accompanied by use of a dangerous weapon or putting somebody's life in jeopardy. I mean, it's two separate counts, an A count and a D count. Sure. Maybe we could continue to stand here and think of hypotheticals, but I haven't seen one. And I don't expect that that will come up. What we have here is a D offense based on A, both independently. Are crimes of violence under the guidelines? Under section C, under ACCA, under all the various propositions here. Can you talk for just a moment? I mean, I noted that in your answering brief, you really didn't address their argument about you could threaten any person. You talked about assault, but you didn't address their or put in jeopardy any person piece of their argument. Is that because there's not a good answer to that language in the statute? No, and I thought we answered the argument in full, but if we fell short. No, because I was looking for it. They make the assertion that there's assault and there is puts in jeopardy any person. And there are two things there. You address assault, but I didn't. If it's in the brief, I didn't see it. Where you take head on the assertion that, hey, there's language in that statute about puts in jeopardy any person. And any person means any person, including the perpetrator. And that's different than assault. So what's your answer to that? Because if it's viewed that way, isn't it indeed broader? Yeah. A broader statement and therefore not a categorical match. Right. Thank you for giving me the opportunity to address it head on. Broadly, what we're saying in our brief, and I'll say specifically now, is that that entire phrase is logically read to apply to threatening another person and not threatening yourself. Why? Why say assault or put in jeopardy another person if they don't have separate meetings? If the second piece is not doing any work? They do have separate meetings. And assault is generally an attack on another person. Putting in jeopardy could be revealing a bomb or some indirect means of hurting other people. And the statute is careful to cover all of those scenarios. But when you read the whole phrase, to assault any person or put in jeopardy the life of any person, this has, I believe, always been understood as being an attack on others. And I've never seen or heard of a prosecution in which someone walks into a bank and says, I will shoot myself unless you hand over the money. That, again, suggests an absurd reading of the statute that the government has never put forth. It's just a logical reading of the entire statute. Wouldn't put in jeopardy, unlike assault, typically mean recklessness? No, not at all. To me, it sounds more like an overt intentional act to put something in jeopardy in the same way that it sounds like an attack on another person. And I do have to say again that I believe. Because they rely on that Seventh Circuit case where there's an Indiana statute where you can put yourself in jeopardy as a way of forcing people to do what you want. And you could be prosecuted. The Seventh Circuit says, that's not crazy. That could be done. You know, vote for me or I'll shoot. This dog turns into vote for me or I'll shoot myself. There's a scene in Blazing Saddles about this. Sure. I mean, Courtney dealt with a broader statute involving intimidation and force directed that any human being was the language that was used there. There was precedent showing that the statute had been applied in that way. Is there really that big a difference between any human being and any person? I don't think so. But there is a difference when you look at the full language of this statute and the full reading of it. Assaults any person and puts in jeopardy the life of any person while committing a bank robbery by force, violence or intimidation. When you read this entire thing, it is directed at force against other people. And that's the way in which it's always been understood. I do have to just repeat my main point, which is that I think 2113D is settled by this court's precedent. Your Honor asked right at the outset, does it matter if somebody comes up with a new argument that wasn't made before? And my answer to that is no. I don't believe that this court has ever said. You know, there are always going to be outstanding attorneys, as we have with Ms. Fossil and Ms. Petropalo, who are going to come along and think of better arguments. But this court rests on its precedent unless it takes the case in back. The Abbott line that Ms. Fossil talked about involving the Pennsylvania drug statute, yes, there have been many different attacks on that. But that's a divisible statute that this court has held is divisible by the type of drug involved. And so what we get to spend our life doing is looking at the different attacks on cocaine involves this substance and heroin involves that isomer and et cetera. Here we're dealing with one statute and the question of whether it's a 924c crime or violence. And this court has answered the question. And I don't think anything about the plain language of this statute detracts from that. Okay. Thank you very much. Thank you very much, Your Honor. And we'll hear from counsel for Mr. Jordan on the bill. I should note, no relation to me. Thank you, Your Honor. I just wanted to address a few points raised by my friend. First, that the government site decision, it's brief, that many case decisions have addressed this. And I would just like to point out that I'm not aware of any decision, published decision, addressing 2113A and D mens rea after Borden. I also would like to correct that the decision in Johnson did not just decide the divisibility question. I think, in fact, suggested that the focus should only be on D. For some reason there the defendant was focusing on A as well. We treated the matter as categorically a crime of violence, did we not? That's what Johnson says. It's a crime of violence. Done. Yes, Your Honor. Yes. And your position is that's all different now because you've made a new argument. I think both, Your Honor, because this is a new argument that was unlitigated and undecided by the court. And so that holding, although it said it's a crime of violence, really must be read to mean insofar as it requires a physical act of force, but not insofar as the mens rea was considered or decided. I think also this Court's precedent allows it to overrule or disregard prior precedent if an intervening Supreme Court decision like Borden compels is inconsistent, which we would submit here. I wanted to turn briefly to the any person argument. Our argument is that that is plain on the face of the statute. Any is an expansive term as. . . My Latin's not great, but nostrososis, you know, words are understood by the company they keep. Does that have any traction in this context? I mean, or put in jeopardy any person. Shouldn't that be understood as being right next to the word assault? Like people don't assault themselves. And when you put or jeopardy of any person next to it, why shouldn't that be understood to mean or put in jeopardy any other person? Because it should be understood in the same way assault is understood. I think that because the term any person is so expansive and the courts have held any to have expansive meaning, there would have to be really strong, clear language in the statute to overcome that plain meaning. And assault maybe suggests that it could have been better drafted to say assaults another person or jeopardizes any person, but. . . Would you really have to say assault another person? Is an assault by definition an assault on another person? I think that background principles of assault could come in to mean that in practice that is only going to apply. . . Well, not just background. I mean, just definitionally, does anybody think it's an assault means I punched myself in the face? Nobody. . . That's never, ever, ever the way that word is used, is it? I acknowledge that, Your Honor, as far as I'm aware. And so I think that may mean that in practice that variant is not going to apply, but I don't think that that is clear enough to signal, to overcome the very plain expansive meaning of any person after puts in jeopardy a person or another. And finally, I would just like to say I still don't think the government has offered a way to read 2113D or A in a way that is consistent with what this said in Borden, that an intentional or knowing act that recklessly causes injury no longer satisfies the force clause. We would ask that this Court reverse and remand for vacating the joint 24C conditions. Thank you, Your Honors.  We appreciate counsel's argument.